UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN McMILLAN,<br><br>        Plaintiff,<br><br>   v.<br><br>TIM V. VIRGA, et al.,<br><br>        Defendants. | No. 2:14-cv-1106 TLN CKD P<br><br><br>ORDER &<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

     Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The action proceeds on the First Amended Complaint filed June 13, 2014, alleging that a California State Prison-Sacramento physician was deliberately indifferent to plaintiff's serious medical need by failing to issue him a medical chrono for a lower bunk. (ECF No. 9 ("FAC").) The court found the FAC to state a cognizable claim against defendant Dr. Ma. (ECF Nos. 10, 25 & 27.) Before the court is defendant's February 25, 2016 motion for summary judgment (ECF No. 35), which has been briefed by the parties (ECF Nos. 45 & 48; see also ECF Nos. 35, 46 & 47.) For the reasons discussed below, the undersigned will recommend that defendant's motion be granted.

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u>

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Analysis

A. Allegations

In his verified complaint, plaintiff alleges as follows:

Defendant was plaintiff's primary care provider at California State Prison-Sacramento. (FAC at 4.) Upon arriving at CSP-SAC in October 2011, plaintiff informed defendant that his right leg had "a steel rod in place from knee to ankle, nine pins and three screws." (Id.) Defendant prescribed pain medication for plaintiff. (Id.)

"During the month of December 2011, plaintiff sought medical attention from Dr. Ma because . . . the housing cell did not provide a safe way for Plaintiff to get up or down from a top bunk and no step-ladder was attached to the cell bunks." (Id.) Dr. Ma did not issue plaintiff a medical accommodation chrono for a lower bunk. (Id.)

3

"In April 2012, . . . plaintiff requested Dr. Ma issue a temporary low bunk chrono until Plaintiff['s] appeal for a medical accommodation is exhausted. Dr. Ma failed to act on Plaintiff's request [and] disregarded Plaintiff['s] safety concerns. Ma then increased Plaintiff's medication order for pain[.]" (Id. at 5.)

"On September 20, 2012, while getting down from the top bunk . . . Plaintiff fell [and] broke his right patella. Plaintiff suffered injuries which caused him to be hospitalized for [four] weeks unable to walk." (Id.) Defendant was "aware of plaintiff's medical and housing needs upon his arrival at C.S.P. . . . But for defendant['s] deliberate indifference to plaintiff's medical needs, plaintiff would not have been injured." (Id.)

B. Facts

The following facts are undisputed unless otherwise noted:

Plaintiff was transferred to CSP-SAC on October 13, 2011. (Def.'s Separate Statement of Undisputed Facts ("DUF") 1.) More than seven years before he arrived at CSP-SAC, plaintiff sustained a gunshot wound to his left leg. (DUF 19.) Plaintiff was examined by non-defendant medical providers in October 2011 and December 2011, and defendant did not participate in either of those examinations. (DUF 2-4.) Defendant first met plaintiff on January 23, 2012. (DUF 5.) Plaintiff fell and injured his knee on September 21, 2012. (DUF 12.)

In his declaration in support of the motion, based on his review of plaintiff's medical file, defendant Ma states that plaintiff "never complained to me, or any other health care provider, of mobility difficulty, and he never requested a bottom-bunk for accommodation while he was at CSP-Sacramento." (ECF No. 35-4, Ma Decl., ¶ 6.) In sworn statements submitted in opposition to the motion, plaintiff disputes this statement and claims he made three "undocumented verbal requests" during his pain management sessions with defendant. (ECF No. 45, Plaintiff's Response to DUF ("Response"), ¶¶6-7.)

A health care services request form is a form that inmates fill out and submit when they need to be examined by medical staff. (DUF 9.) Between his October 2011 arrival at CSP-SAC and January 2012, when defendant examined him, plaintiff submitted two health care services request forms seeking medical attention, both concerning migraines. (DUF 8-11.)

4

In the eight months between defendant's examination of plaintiff and his fall in September 2012, plaintiff submitted ten health care services request forms. (DUF 13.) Plaintiff acknowledges that none of these requests mentioned mobility problems or requested a lower bunk accommodation. (DUF 14-16; Response, ¶ 14.) However, plaintiff avers that he raised these issues during his pain management sessions with defendant. (Response, ¶ 14.) Defendant declares that plaintiff "did complain about pain in his leg, and requested pain medication, but pain and mobility are two different medical considerations that may be treated differently." (Ma Decl., ¶ 7.) Defendant further declares that plaintiff's medical records noted that "his mobility was quite good, and his activities of daily living were well maintained." (Id.)

Prior to his fall, plaintiff "never requested or received a lower-bunk chrono from any other CDCR doctor" and there was nothing in his medical file indicating mobility problems. (Ma Decl., ¶¶ 8-9.) Thus defendant "assume[d] he had no difficulties being assigned a top bunk." (Id.) Defendant denies disregarding any request plaintiff made for medical treatment, and declares that he treated plaintiff for pain management pursuant to plaintiff's requests in the health care services forms. (Id., ¶ 10.)

Inmates within CSP-SAC that have concerns or issues relating to their health care and treatment by CSP-SAC medical staff, and who wish to file an inmate appeal regarding those issues, must file a health care appeal with CSP-SAC's Health Care Appeals Office. (ECF No. 35-5, Gibson Decl., ¶ 4.) Plaintiff declares he was unaware of this requirement and concedes that he never filed any health care appeal with the Health Care Appeals Office at CSP-SAC. (DUF 31; Response, ¶¶ 29, 31.) Nor did plaintiff submit a health care appeal for third level review on the claim that defendant failed to issue him a lower-bunk chrono.[1] (DUF 32.)

Plaintiff submits a copy of a CDCR 602 inmate appeal he filed; however, the copy is of poor quality and difficult to read. (ECF No. 31 at 4.) The appeal was submitted on September 25, 2012, days after plaintiff's fall, and was marked "rejected" and "cancelled" at the first level of

---

[1] Title 15 § 3084 of the California Code of Regulations governs the inmate grievance process. (See ECF No. 35-6, Robinson Decl., ¶ 6.) Section 3084.1(b) and 3084.7(d)(3) provide that all grievances are subject to a third level of review before administrative remedies are deemed exhausted. (Id.)

review. (Id. at 4-5.)

C. Discussion

1. Exhaustion of Remedies

Defendant argues that the summary judgment is proper due to plaintiff's failure to exhaust administrative remedies. See Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).

Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (also known as the Prison Litigation Reform Act ("PLRA")). A prisoner must exhaust his administrative remedies before he commences suit. McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir. 2002). Failure to comply with the PLRA's exhaustion requirement is an affirmative defense that must be raised and proved by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 218. An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006).

Here, there is no evidence that plaintiff exhausted administrative remedies as to his claim that he was mobility-impaired and required a lower bunk in 2012. Plaintiff concedes that he did not file any health care appeals at CSP-SAC, as he was unaware of this requirement. The 602 appeal he did submit was rejected at the first level of review. In plaintiff's eleven months at CSP-SAC prior to his fall, there is not a single request or appeal documenting his alleged need for a lower bunk.

On this record, the undersigned finds that defendant has met his initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy" as to the events giving rise to this action. Albino, 747 F.3d at 1172. Next, the burden shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. Plaintiff's unawareness of the procedure for exhausting health care claims at CSP-SAC, without more, does not excuse his failure to exhaust. See Albino v. Baca,

1  697 F.3d 1023, 1037 (9th Cir. 2012), on reh'g en banc 747 F.3d 1162 (9th Cir. 2014) ("[F]or an

2  inmate to claim that a prison's grievance procedure was effectively unavailable due to the

3  inmate's unawareness of the procedure, the inmate must show that the procedure was not known

4  and unknowable with reasonable effort."). Thus, defendant is entitled to summary judgment due

5  to plaintiff's failure to exhaust.

6  2. Genuine Dispute of Fact

7  Alternatively, defendant argues that plaintiff has not evinced a genuine dispute of

8  material fact that defendant was deliberately indifferent to his serious medical need.

9  Denial or delay of medical care for a prisoner's serious medical needs may constitute a

10  violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S.

11  97, 104-05 (1976). An individual is liable for such a violation only when the individual is

12  deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d

13  1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v.

14  Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

15  In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439

16  F.3d at 1096. First, the plaintiff must show a "serious medical need" by demonstrating that

17  "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary

18  and wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104.

19  Second, the plaintiff must show the defendant's response to the need was deliberately

20  indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act

21  or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

22  indifference. Id. Under this standard, the prison official must not only "be aware of facts from

23  which the inference could be drawn that a substantial risk of serious harm exists," but that person

24  "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective

25  approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839.

26  A showing of merely negligent medical care is not enough to establish a constitutional

27  violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-

28  106. A difference of opinion about the proper course of treatment is not deliberate indifference,

7

nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Resolving all evidentiary disputes in plaintiff's favor, the court assumes that, during an April 2012 pain management session with defendant, plaintiff requested a temporary lower bunk chrono.  The court further assumes that plaintiff verbally raised this issue two more times with defendant prior to September 21, 2012.

On this record, plaintiff has not made a showing that his mobility issue – as distinct from his pain – was a serious medical need.  Medical records in plaintiff's file indicated that his mobility was good and he was able to maintain the "activities of daily living."  Though he filed numerous health care services request forms at CSP-SAC prior to his fall, none of them complained of mobility problems or requested an accommodation for such problems.

Similarly, plaintiff has not made a showing that defendant was deliberately indifferent to his need for a lower bunk accommodation.  According to plaintiff's medical files, no CDCR physician had ever issued him a lower bunk chrono, and plaintiff made no written request for such a chrono prior to his fall.  Even if plaintiff verbally requested a lower bunk during his pain management meetings with defendant, there is no evidence that defendant had reason to believe, or did believe, that plaintiff was at a serious risk of harm if not reassigned to a lower bunk.

Thus defendant is entitled to summary judgment on the alternative ground of a lack of genuine dispute of material fact.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to set aside motion for summary judgment (ECF No. 47) is denied.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 35) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

Case 2:14-cv-01106-TLN-CKD   Document 49   Filed 08/04/16   Page 9 of 9

"Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 4, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / mcmi1106.sj

9